FILED

2009 JUL 24  AM 10: 57

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

REILLY POZNER LLP
Michael A. Rollin (SBN 251557)
10833 Wilshire Boulevard, Unit 604
Los Angeles, CA 90024
Telephone: 310-474-6336
Facsimile: 303-893-6110
Email: mrollin@rplaw.com

REILLY POZNER LLP
Daniel M. Reilly (Pro Hac Pending)
Matthew D. Spohn (Pro Hac)
511 Sixteenth Street, Suite 700
Denver, CO 80202
Telephone: 303-893-6100
Facsimile: 303-893-6110
Email: dreilly@rplaw.com
       mspohn@rplaw.com

Attorneys for Plaintiff LEHMAN
BROTHERS HOLDINGS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS, INC., | CASE NO. 09-CV-04555-DSF-FMO |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| vs. | Discovery Cutoff:   None Set |
| MILLENNIUM MORTGAGE CORP. DBA MILLENNIUM MORTGAGE CAPITAL COMPANY, MILLENIUM MORTGAGE CAPITAL, and BRENT PLATT, | Pretrial Conference: None Set<br>Trial Date:   None Set |
| Defendant(s) | |

FIRST AMENDED COMPLAINT

303636

Plaintiff Lehman Brothers Holdings, Inc. ("LBHI") invokes this court's jurisdiction pursuant to 28 U.S.C. § 1332 given the complete diversity of citizenship between the plaintiff and defendants. LBHI, by and through its undersigned attorneys, and for its causes of action against Defendants Millennium Mortgage Corp. d/b/a Millennium Mortgage Capital ("MMCorp"), Millennium Mortgage Capital ("MMCap"), and Brent Platt, states and alleges as follows:

## NATURE OF ACTION

1. From 2001 until 2008, Lehman Brothers Bank, FSB ("LBB," and collectively with LBHI, "Lehman") purchased mortgage loans from MMCorp pursuant to a series of written contracts. LBB subsequently assigned its rights under those contracts to LBHI and sold certain of those loans to LBHI. With respect to certain of these mortgage loans, MMCorp breached representations, warranties and covenants and other provisions of the contracts. By this action, LBHI seeks to recover money damages caused by MMCorp's failure or refusal to repurchase certain of these mortgage loans or to provide indemnity for losses sustained on those loans. LBHI seeks judgment against MMCorp, its alter ego MMCap, and against its owner Brent Platt who is personally liable for the debts of both MMCorp and MMCap.

## PARTIES

2. LBHI is a Delaware corporation with its principal place of business in New York. LBHI has filed voluntary petitions for protection under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York. LBHI is authorized to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code and proceeds in this action as a debtor-in-possession. Prior to filing bankruptcy, the majority of LBHI's business in the United States was conducted from its New York offices. The majority of its employees and property in the United States were located in New York, and the majority of its earnings in the United States were earned in New York.

3. Millennium Mortgage Corp. ("MMCorp") is a California corporation with

1

FIRST AMENDED COMPLAINT

303636

its principal place of business in Palm Desert, California. It does business under its own name and under the d/b/a "Millennium Mortgage Capital Company" and "Millennium Mortgage Capital." The majority of MMCorp's business has taken place and continues to take place in California. As late as 2006 it did business and, upon information and belief, continues to do business through its main office in Palm Desert, California and in additional offices located in Solana Beach, Irvine, Los Angeles, Temecula and Cathedral City, California. For a short amount of time the company did a small amount of its business through an office located in Florida. As late as 2006 the majority of its employees were and, upon information and belief, continue to be, located in the state of California and specifically in Palm Desert, California. As late as 2006 the majority of the company's tangible property such as computer equipment were and, upon information and belief, continue to be located in the state of California and specifically in Palm Desert, California. As late as 2006 the majority of the company's business operations—consisting almost exclusively of mortgage loan origination and brokering—and resulting income earnings were and, upon information and belief, continue to be conducted in the state of California and specifically in Palm Desert, California. MMCorp's corporate headquarters are in Palm Desert, California.

4. Millennium Mortgage Capital ("MMCap") is a California corporation with its principal place of business in Palm Desert, California. MMCorp has held itself out as a company doing business as Millennium Mortgage Capital. Accordingly, the facts pled above regarding MMCorp's business apply equally to MMCap: The majority of its business has taken place and continues to take place in California and specifically Palm Desert; the majority of its employees are located in the state of California and specifically in Palm Desert; the majority of the company's tangible property is located in the state of California and specifically in Palm Desert; and the majority of the company's business operations and resulting income earnings are conducted in the state of California and specifically in Palm Desert. MMCap's corporate headquarters are in Palm Desert, California.

303636

5. Brent Platt is a resident of Rancho Mirage and/or Palm Desert, California and a citizen of the state of California. As late as 2006 he was and, upon information and belief, continues to be the sole shareholder of MMCorp. Upon information and belief, he is the sole shareholder of MMCap.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff LBHI and Defendants MMCorp, MMCap and Brent Platt and the amount in controversy exceeds $75,000, exclusive of interests and costs.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because MMCorp and MMCap reside in Palm Desert, Riverside County, California, and Brent Platt resides in Rancho Mirage, Riverside County, California.

## FACTUAL ALLEGATIONS

8. Lehman engages in the purchase and sale of mortgage loans.

9. MMCorp engages in mortgage lending, as well as the sale of mortgage loans in the secondary market to investors such as Lehman.

10. Between August 2001 and March 2006, MMCorp entered into several written Loan Purchase Agreement with LBB, including the Loan Purchase Agreement dated July 7, 2004 (the "Agreement"). The Agreement specifically incorporates the terms and conditions of the Seller's Guide of Lehman's agent Aurora Loan Services LLC ("Aurora"), which sets forth additional duties and obligations of MMCorp.

11. Each of the Agreement and the Seller's Guide sets forth the duties and obligations of the parties with respect to the purchase and sale of mortgage loans, including but not limited to purchase price, delivery and conveyance of the mortgage loans and mortgage loan documents, examination of mortgage loan files and underwriting, representations and warranties concerning the parties and individual mortgage loans purchased or sold, and remedies for breach.

12. MMCorp sold a number of mortgage loans to Lehman under the Agreement

and Seller's Guide, including the loans numbered 1 through 8 on **Exhibit A**, attached hereto and incorporated by reference herein.

13. Subsequent to such sales by MMCorp, LBB sold all of the loans discussed below to LBHI.

14. Subsequent to such sales by MMCorp, LBB assigned all of its rights and remedies under the Agreement and Seller's Guide to LBHI.

## Representations, Warranties and Covenants

15. With respect to each of the loans sold to Lehman under the Agreement and Seller's Guide, MMCorp made a number of representations, warranties and covenants concerning the mortgage loans including with respect to, without limitation:

  (a) the validity of all mortgage loan documentation;

  (b) the accuracy and integrity of all information and documentation regarding borrower identity, income, employment, credit, assets, and liabilities used in making the decision to originate the mortgage loans;

  (c) occupancy by the borrower of the property securing the mortgage loan;

  (d) the ownership, nature, condition, and value of the real property securing the respective mortgage loans; and

  (e) the conformance of the mortgage loans with applicable underwriting guidelines and loan program requirements.

16. MMCorp also represented and/or warranted that no error, omission, misrepresentation, negligence, fraud, or similar occurrence took place with respect to the mortgage loans by any person involved in the origination of the mortgage loans, and that no predatory or deceptive lending practices were used in the origination of the mortgage loans.

17. With respect to itself, MMCorp represented and/or warranted that it has the ability to perform its obligations under, and satisfy all requirements of, the Agreement and Seller's Guide.

18. With respect to certain mortgage loans purchased from MMCorp, Lehman discovered material problems with those loans and that MMCorp had breached representations, warranties and/or covenants under the Agreement and Seller's Guide concerning the mortgage loans, including but not limited to those set forth in paragraphs 15 and 16 above.

19. More specifically, with respect to the loan numbered 1 on **Exhibit A**, attached hereto and incorporated by reference herein, MMCorp breached one or more of the representations, warranties and/or covenants under the Agreement and Seller's Guide. Specifically, the loan application and occupancy affidavit signed by the borrower that were transmitted to LBB's agent Aurora stated that the subject property would be the borrower's primary residence; the occupancy affidavit also stated that the borrower would occupy the subject property within sixty days of closing. The borrower did not use the subject property as her primary residence, and did not occupy the subject property within sixty days of closing. By these facts, MMCorp breached its representation, warranty and covenant in Section 703(1) of the Seller's Guide that "[n]o document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgager), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading."

20. LBHI, through its agent, provided MMCorp with individual letters informing MMCorp of MMCorp's breach of the representations, warranties and covenants with respect to the loan referenced in paragraph 19 above and demanding that MMCorp repurchase the mortgage loan referenced in paragraph 19 above at the specified repurchase price.

21. MMCorp has refused, and continues to refuse, to repurchase the mortgage loans, to indemnify Lehman, or otherwise comply with its obligations under the Agreement and Seller's Guide with respect to the mortgage loan referenced in paragraph

19 above. MMCorp's failure and refusal to repurchase the mortgage loans or to indemnify Lehman is a material breach of the Agreement and Seller's Guide.

22. MMCorp's failure and refusal to honor its contractual obligations discussed above has proximately caused material and adverse effect upon LBHI, causing LBHI to suffer losses on each of the loans discussed above which it would not have suffered had MMCorp honored its obligations.

### Early Payment Defaults

23. As assigned, the Agreement and Seller's Guide further specify that LBHI or its agent may demand that MMCorp repurchase, and that MMCorp shall repurchase mortgage loans that become Early Payment Defaults.

24. A loan becomes an Early Payment Default under the Agreement and Seller's Guide in one of two ways. For loans prior-approved by the purchaser, the loan becomes an Early Payment Default if the borrower fails to make the first monthly payment due within 30 days of the payment's due date. For loans purchased pursuant to the seller's delegated underwriting authority, eligible for delegated underwriting, or purchased in bulk transactions, the loan becomes an Early Payment Default if the borrower fails to make the first or second monthly payment due within 30 days of each such monthly payment's respective due date. MMCorp received delegated underwriting authority before it sold the loans in question.

25. Certain loans that Lehman purchased from MMCorp became Early Payment Defaults. More specifically, with respect to the loans numbered 2 through 8 on **Exhibit A**, attached hereto and incorporated by reference herein, those loans became Early Payment Defaults because the borrower failed to make the first and/or second payment within 30 days of the due dates for those payments.

26. LBHI, through its agent, provided MMCorp with written notice concerning the fact that the loans referenced in paragraph 25 above became Early Payment Defaults and demanded that MMCorp repurchase those mortgage loans.

27. MMCorp has refused, and continues to refuse, to repurchase the mortgage

loans or otherwise comply with its obligations under the Agreement and Seller's Guide with respect to the loans referenced in paragraph 25 above.

28. MMCorp's failure and refusal to repurchase the mortgage loans or to indemnify Lehman is a material breach of the Agreement and Seller's Guide.

29. MMCorp's failure and refusal to honor its contractual obligations discussed above has proximately caused material and adverse effect upon LBHI, causing LBHI to suffer losses on each of the loans discussed above which it would not have suffered had MMCorp honored its obligations.

### MMCap's Liability

30. Though separately incorporated, MMCap is an alter ego of MMCorp. It has the same sole shareholder, the same or substantially the same corporate officers or controlling persons, its business is conducted from the same address using the same employees, telephone number and website as MMCorp, often uses the same trade names as MMCorp, and conducts the same business as MMCorp.

31. Upon information and belief, the assets of MMCap and MMCorp are and have been commingled, assets are routinely transferred between MMCap and MMCorp, separate and adequate books and records are not kept for MMCap and MMCorp, legal and corporate formalities are not observed for either MMCap or MMCorp, and arm's-length relationships are not maintained between MMCap and MMCorp.

32. Upon information and belief, neither MMCap nor MMCorp are or have been adequately capitalized, the shareholder of both MMCap and MMCorp has diverted assets from MMCap and MMCorp to the detriment of their creditors, the shareholder and officer of both MMCap and MMCorp is using MMCap to continue MMCorp's business while attempting to avoid MMCorp's debts and liabilities, and the business of each MMCorp and MMCap has been used to provide services and earnings for the other.

33. Upon information and belief, MMCorp and MMCap have been used as mere shells, instrumentalities, and conduits for a single business which has been undertaken by the sole shareholder of each, and at times MMCorp and MMCap have been used as mere

shells, instrumentalities, and conduits for the business of the other company. Upon information and belief, MMCorp entered into the Agreement with the intent to avoid performance by using MMCorp as a shield against liability while continuing business and continuing to generate earnings for the companies' sole shareholder through MMCap.

34. For the foregoing reasons, MMCap is liable to LBHI on LBHI's claims against MMCorp stated herein.

### Brent Platt's Liability

35. As late as 2006 Brent Platt was and, upon information and belief, continues to be the sole shareholder of MMCorp. Upon information and belief, he is the sole shareholder of MMCap.

36. Mr. Platt has commingled his personal assets and those of MMCorp and MMCap, and treated the assets of the corporations as his own. In MMCorp's audited financial statements it is admitted that "[i]n connection with normal operations, the shareholder advances funds to, and receives funds from the Company. . . . The advances to and from the shareholder do not bear interest and also have no specific repayment terms." It is also admitted that Mr. Platt transferred a condominium and the mortgage debt on that condominium to MMCorp, but personally held the credit line secured by the condominium and, upon information and belief, used that credit line for purposes unrelated to MMCorp's business. It is also admitted in the audited financial statements that Mr. Platt transferred funds between MMCorp and another affiliated company he controls, which is believed to be MMCap. It is further admitted in MMCorp's audited financial statements that MMCorp leasted its facilities and some of its equipment from another company that Mr. Platt controls which, upon information and belief, is MMCap.

37. Mr. Platt has diverted the funds of MMCorp and MMCap to uses other than to the benefit of the companies. In MMCorp's audited financial statements it is admitted that the condominium owned by MMCorp was rented to one of Mr. Platt's relatives, and that the relative allegedly made improvements to the condominium in lieu of paying rent. It is also admitted that the condominium was ultimately sold, but only in exchange for a

note owed to MMCorp. In addition, in MMCorp's audited financial statements it is admitted that MMCorp has made loans to Mr. Platt's relatives with no interest or specific repayment terms. In one instance MMCorp loaned money to one of Mr. Platt's relatives at an interest rate of 1% per annum with no specific repayment terms; the loan was later reclassified as payment of consulting fees to the relative and wiped from MMCorp's books. Upon information and belief, all the foregoing actions were authorized by Mr. Platt as MMCorp's sole shareholder and corporate officer.

38. In MMCorp's audited financial statements it is admitted that Mr. Platt transferred real estate to MMCorp which sold some of the properties, causing Mr. Platt to reverse his position that the properties constituted capital contributed to MMCorp. Upon information and belief, Mr. Platt personally retained the proceeds of the sale of those properties.

39. Upon information and belief, Mr. Platt has failed to maintain separate and adequate corporate records for MMCap, MMCorp and himself, has failed to capitalize MMCorp and MMCap adequately, has failed to issue stock, pay dividends or hold board meetings for either MMCorp or MMCap, has used MMCorp and MMCap as mere shells, instrumentalities, and conduits for his single business venture, has disregarded legal formalities and failed to maintain arm's-length relationships among his personal activities and the corporate activities of both MMCorp and MMCap, has exerted total control over both MMCorp and MMCap, and has siphoned funds from both MMCorop and MMCap.

40. In addition, LBHI incorporates herein the facts alleged in paragraphs 3 through 5, 30 through 34 and 55 through 56.

41. For the foregoing reasons, Mr. Platt is liable to LBHI on LBHI's claims against MMCorp and MMCap stated herein.

## FIRST CLAIM FOR RELIEF
(Breach of Contract – Damages)

42. LHBI hereby repeats and realleges the above allegations of this Complaint as if fully set forth herein.

43. Each of the Agreement and Seller's Guide is a valid and enforceable contract that is binding upon MMCorp.

44. Lehman, Lehman's agents and any and all assignees of Lehman's rights have substantially performed all of their obligations under the Agreement and Seller's Guide.

45. As set forth herein, MMCorp has breached the respective Agreement and Seller's Guide by (a) breaching the representations, warranties, and/or covenants, (b) refusing or otherwise failing to repurchase the mortgage loans affected by the breached representations, warranties, and/or covenants, and/or refusing to indemnify Lehman, and (c) refusing or otherwise failing to repurchase the mortgage loans that have become Early Payment Defaults.

46. With regard to the mortgage loans that MMCorp has failed to repurchase and/or indemnify, MMCorp's breaches of the Agreement and Seller's Guide resulted in actual and consequential damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

(Breach of Express Warranty)

47. LHBI hereby repeats and realleges the above allegations of this Complaint as if fully set forth herein.

48. The Agreement and the Seller's Guide constitute valid and enforceable contracts that are binding upon MMCorp.

49. With regard to each of the mortgage loans sold to Lehman under the Agreement and Seller's Guide, MMCorp made a number of express warranties with respect to material facts concerning the loans as set forth in paragraphs 15 and 16 above.

50. The express warranties contained in the Agreement and Seller's Guide were part of the basis of the bargain between Lehman and MMCorp.

51. MMCorp breached such express warranties for the loan numbered 1 on **Exhibit A**, attached hereto and incorporated by reference herein.

52. LBHI, through its agent, provided MMCorp with timely written notice

concerning MMCorp's breaches of the express warranties.

53. MMCorp refused or failed to take adequate steps to remedy or to compensate Lehman for Paramount's breaches of the express warranties. MMCorp's breach of its warranties was a proximate cause of material and adverse effects upon LBHI, causing LBHI to suffer losses on each of the loans discussed above which it would not have suffered had MMCorp honored its obligations.

### THIRD CLAIM FOR RELIEF

(Declaratory Judgment/Alter Ego/Piercing the Corporate Veil)

54. LHBI hereby repeats and realleges the above allegations of this Complaint as if fully set forth herein.

55. There is such a unity of interest, ownership and control between MMCorp and MMCap, between MMCorp and Mr. Platt, and between MMCap and Mr. Platt, that they have no separate existence. MMCap and MMCorp are mere instrumentalities and alter egos of each other and of Mr. Platt.

56. It would be inequitable and unjust, and would sanction a fraud perpetrated by Mr. Platt through MMCorp and MMCap, if MMCorp alone were held liable to LBHI on the Agreement.

57. Accordingly, MMCap should be determined to be the alter ego of MMCorp, and the corporate veils of both MMCap and MMCorp should be pierced and both entities should be determined to be alter egos of Mr. Platt, such that MMCap and Mr. Platt are each liable for MMCorp's debts to LBHI under the Agreement.

58. LBHI requests that this Court declare that MMCap is the alter ego of MMCorp, that MMCap's and MMCorp's corporate veils are pierced and are merely alter egos of Mr. Platt, and that MMCap and Mr. Platt are each liable for MMCorp's debts to LBHI under the Agreement.

### PRAYER FOR RELIEF

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor and against MMCorp, MMCap and Brent Platt as follows:

11
FIRST AMENDED COMPLAINT

303636

(a) For all damages arising from or relating to MMCorp's breaches of contract and express warranty, in an amount to be proved at trial;

(b) For an Order of this Court declaring that MMCap is the alter ego of MMCorp, that MMCap's and MMCorp's corporate veils are pierced and are merely alter egos of Mr. Platt, and that MMCap and Mr. Platt are each liable for MMCorp's debts to LBHI under the Agreement;

(c) For an Order of this Court declaring that MMCorp, MMCap and Brent Platt are required to compensate LHBI immediately for all actual and consequential damages resulting from MMCorp's breaches of the representations and/or warranties and Early Payment Default provisions of the Agreement and Seller's Guide.

(d) For recoverable prejudgment and postjudgment interest;

(e) For the costs and expenses of suit incurred by LBHI herein, including attorneys fees and costs and expert witness fees, as provided in the parties' Agreement; and

(f) For such other relief as this Court deems just and proper.

DATED: July 24, 2009                             REILLY POZNER LLP

By _____
Michael A. Rollin
Attorneys for Plaintiff Lehman Brothers Holdings, Inc.

**EXHIBIT A**

| No. | Loan No. | Claim Reason |
|---|---|---|
| 1 | ******0546 | MISREP - OCCUPANCY |
| 2 | ******3186 | EARLY PAYMENT DEFAULT |
| 3 | ******4691 | EARLY PAYMENT DEFAULT |
| 4 | ******2330 | EARLY PAYMENT DEFAULT |
| 5 | ******0415 | EARLY PAYMENT DEFAULT |
| 6 | ******2547 | EARLY PAYMENT DEFAULT |
| 7 | ******8476 | EARLY PAYMENT DEFAULT |
| 8 | ******2676 | EARLY PAYMENT DEFAULT |